FILED IN OPEN COURT
OCT 23 2024
CHRISTOPHER L. EKMAN, CLERK

SGL

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIM. NO. 24-171-JB |
| | * | USAO NO. 23R00066 |
| | * | |
| v. | * | VIOLATIONS: 18 U.S.C. § 371 |
| | * | 42 U.S.C. § 1320a-7b(b)(1) |
| | * | 18 U.S.C. § 1956(a)(2) |
| MICHAEL VIARENGO | * | |
| | * | |
| | * | |
| | * | FORFEITURE NOTICE |

### INDICTMENT

**THE GRAND JURY CHARGES:**

### COUNT ONE
### Conspiracy to Violate the Anti-Kickback Statute
### Title 18, United States Code, Section 371

1. From in or about September 2018 through in or about March 2020, in the Southern District of Alabama and elsewhere, the defendant,

**MICHAEL VIARENGO,**

did knowingly, willfully, and unlawfully combine, conspire, confederate, and agree with Steven Churchill, Samson Solomon, and others to knowingly and willfully offer, solicit, pay, or receive unlawful remunerations in violation of the Anti-Kickback Statute, specifically 42 U.S.C. § 1320a-7b(b)(1), (2).

## OBJECTIVE OF THE CONSPIRACY

2.  The objective of the conspiracy was to pay and receive kickbacks in exchange for **VIARENGO** providing Medicare beneficiary leads to Steven Churchill and Samson Solomon.

## BACKGROUND

### The Medicare Program

3.  Medicare is a federal program administered by the Centers for Medicare and Medicaid Services ("CMS"), an agency of the U.S. Department of Health and Human Services and is a "health care benefit program" as defined in 18 U.S.C. § 24(b).

4.  Medicare is funded through individual payroll taxes, other taxes, and user fees. Medicare helps pay for certain medical services for people aged 65 and over and some other individuals with specific illnesses and/or disabilities. Individuals who receive benefits under Medicare are referred to as Medicare "beneficiaries."

5.  Each Medicare beneficiary is identified with a unique beneficiary identifier number known as a "BIN." These BINs are used, among other ways, to submit claims to Medicare seeking reimbursement for covered benefits, items, and services. BINs are considered means of identification pursuant to 18 U.S.C. § 1028(d)(7).

6.  Medical providers and suppliers must obtain a National Provider Identifier ("NPI") number before enrolling in Medicare. Healthcare providers seeking to become Medicare providers must submit enrollment documentation to Medicare.

7.  Every enrollment application submitted by, or on behalf of, a healthcare provider, includes an agreement by the healthcare provider to abide by Medicare's rules and regulations. As a condition of payment, Medicare requires providers to certify all information on the claim to be true, correct, and complete.

8. Medicare does not reimburse providers for claims for testing, items, or services procured in violation of the Federal Anti-Kickback statute, including the provision set out in 42 U.S.C. §1320a-7b(b)(1) and (2).

## Durable Medical Equipment

9. Medicare Part B provides coverage for durable medical equipment, prosthetics, orthotics, and supplies related to these items, often known collectively as "durable medical equipment" or "DME." Durable medical equipment includes, but is not limited to, items such as rigid and semi-rigid ankle, knee, back, elbow, wrist, and hand braces.

10. Before a person or company (*i.e.*, a "provider") can bill Medicare for items or services provided to beneficiaries, the provider must enroll with Medicare. As part of this enrollment requires the provider to certify that they will abide by federal laws and regulations, including the Anti-Kickback Statute provisions set out in 42 U.S.C. § 1320a-7b(b).

11. DME providers are prohibited from making payments to telemedicine marketers and call centers in return for receiving Medicare beneficiary information and leads for which Medicare services are provided.

## Relevant Parties During the Conspiracy

12. **VIARENGO** owned and operated a lead generator call center business in the Southern District of Alabama identified herein as Company–A.

13. Steven Churchill ("Churchill") was the owner and president of a Florida-based company identified herein as Company–B. Samson Solomon ("Solomon") worked at Company–B with Churchill. Both Churchill and Solomon have pleaded guilty to violating the Anti-Kickback Statute while working at Company–B.

14. An individual identified herein as Individual–1 owned a call center business identified herein as Company–C. Company–C is located outside the United States.

## MANNER AND MEANS OF THE CONSPIRACY

15. To carry out the objective of this conspiracy, Individual–1 used Company–C to generate "leads," which were supposedly requests by Medicare beneficiaries for certain DME products. Foreign call center operators, employed by Individual-1 and Company-C, would contact Medicare beneficiaries regarding Medicare eligibility for DME products. Once the Medicare beneficiaries were on the phone, the calls would be transferred to **VIARENGO's** call center. **VIARENGO** paid Individual-1 and Company-C for these leads.

16. After receiving the leads, **VIARENGO** used Company–A to further qualify or "develop" these leads. Developing a lead entailed employees of Company-A speaking with Medicare beneficiaries, asking them questions regarding their Medicare status, and determining whether these Medicare beneficiaries had received DME, specifically medical braces, in the past. Upon confirming that the leads were "good" leads, capable of billing Medicare, the lead was then entered into a spreadsheet setting out the ability to bill Medicare for devices.

17. **VIARENGO** entered an agreement with Churchill and Company–B to be paid in exchange for providing leads, which were kickback payments.

18. Ultimately, Company–B sold the leads to DME providers who billed Medicare for DME products that were not requested or needed by the Medicare beneficiaries. Company-B then paid **VIARENGO** and Company-A based on the number and quality of leads sold in an amount totaling approximately $1,052,640.00.

## OVERT ACTS

19. During the time period alleged in this count, numerous overt acts were done in furtherance of the conspiracy. These overt acts include, but are not limited to the following:

   a. On or about October 29, 2019, Company–A received $81,620.00 in remunerations from Company–B in exchange for leads provided to Company–B by **VIARENGO**.

   b. On or about November 5, 2019, Company–A received $74,200.00 in remunerations from Company–B in exchange for leads.

   c. On or about November 26, 2019, Company–A received $36,480.00 in remunerations from Company–B in exchange for leads.

   d. On or about January 28, 2020, Company–A received $14,000.00 in remunerations from Company–B in exchange for leads.

All in violation of Title 18, United States Code, Section 371.

## COUNTS TWO THROUGH FIVE
### Anti-Kickback Statute Violations
### Title 42, United States Code, Section 1320a-7b(b)

20. On or about the dates listed in the chart below, in the Southern District of Alabama, the defendant,

**MICHAEL VIARENGO,**

did knowingly and willfully solicit and receive remunerations, including kickbacks, directly and indirectly, overtly and covertly, in cash and in kind, from Steven Churchill in exchange for the arranging for, recommending, referring, or transferring leads for medical services and items for which payment was made in whole or in part under Medicare, a federal healthcare program.

21. As part of the conspiracy alleged in Count One of this Indictment, the following kickback payments were made from Churchill's Company–B to **VIARENGO's** Company–A in exchange for leads.

| Count | Payment Date | Amount | Payor | Payee |
|---|---|---|---|---|
| 2 | October 29, 2019 | $81,620.00 | Company–B | Company–A |
| 3 | November 5, 2019 | $74,200.00 | Company–B | Company–A |
| 4 | November 26, 2019 | $36,480.00 | Company–B | Company–A |
| 5 | January 28, 2020 | $14,000.00 | Company–B | Company–A |

All in violation of Title 42, United States Code, Section 1320a-7b(b)(1).

## COUNTS SIX THROUGH TWELVE
### International Money Laundering
### Title 18, United States Code, Section 1956(a)(2)

22. From in or about September 2018 through in or about March 2020, in the Southern District of Alabama and elsewhere, the defendant,

**MICHAEL VIARENGO,**

transported, transmitted, transferred, or attempted to do so, monetary instruments and funds from a place within the United States to a place outside the United States with the intent to promote the carrying on of specified unlawful activity; specifically violations of the Anti-Kickback statute, in violation of Title 42, United States Code, Section 1320a-7b(b)(1).

23. The following transports, transmissions, or transfers of monetary instruments or funds were initiated, or caused to be initiated, by **VIARENGO** within the Southern District of Alabama, and terminated in a place outside the United States. Specifically, these were payments made by **VIARENGO** to Company–C to purchase the leads which he later developed through Company–A to sell to Churchill and Sampson at Company–B.

| Count | Payment Date | Amount | Payor | Payee |
|---|---|---|---|---|
| 6 | July 17, 2019 | $9,500.00 | Company–A | Company–C |
| 7 | August 7, 2019 | $9,200.00 | Company–A | Company–C |
| 8 | October 22, 2019 | $33,390.00 | Company–A | Company–C |
| 9 | October 29, 2019 | $40,810.00 | Company–A | Company–C |
| 10 | November 5, 2019 | $37,100.00 | Company–A | Company–C |
| 11 | November 26, 2019 | $18,240.00 | Company–A | Company–C |
| 12 | January 28, 2020 | $6,000.00 | Company–A | Company–C |

All in violation of Title 18, United States Code, Section 1956(a)(2).

## FORFEITURE NOTICE

The allegations contained in Counts One through Twelve of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 18 United States Code, Section 982(a)(2)(A), and Title 28, United States Code, Section, 2461(c).

Upon conviction of the offenses in violation of Title 18, United States Code, Section 371 set forth in Count One; Title 42 United States Code, Section 1320a-7b(b)(2) set forth in Counts Two through Five, and Title 18 United States Code § 1956(a)(2) set forth in Counts Six through Twelve, the defendant,

**MICHAEL VIARENGO,**

shall forfeit to the United States any property real or personal constituting or derived from proceeds traceable to the offenses or any property constituting or derived from proceeds the person obtained directly or indirectly as a result of such offenses. The property to be forfeited includes, but is not limited to the following:

   a. A MONEY JUDGMENT: A sum of money in United States Currency of $309,270, more or less, that the defendant, **MICHAEL VIARENGO,** obtained as a result of any one or more of the offenses charged in Counts One through Twelve.

If any of the property described above, as a result of any act or omission of the defendants:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been comingled with other property which cannot be subdivided without difficulty;

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p).

All pursuant to Title 21 United States Code, Section 853 and Title 28 United States Code Section 2461(c).

A TRUE BILL

FOREMAN UNITED STATES GRAND JURY
SOUTHERN DISTRICT OF ALABAMA

SEAN P. COSTELLO
UNITED STATES ATTORNEY

By:

_S. Gaillard Ladd by Kasee S. Heisterhagen_
S. GAILLARD LADD
Assistant United States Attorney

_Sean P. Costello by Kasee S. Heisterhagen_
SEAN P. COSTELLO
United States Attorney                               OCTOBER 2024